

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 1 5 2005

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:03-CV-2781-P |
| IPIC INTERNATIONAL, INC., et al., | § § | |
| Defendants, | § § | |
| and | § § | |
| EVA SETSER a/k/a EVA SMITH, AND LARRY KUNCL, | § § § | |
| Relief Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is the Estate of Edgar J. Monroe and Robert J. Monroe's (together "Monroe") Motion to Amend or Alter the General Plan of Distribution and to Authorize Litigation to Proceed in the Louisiana Court ("Motion to Authorize"), filed October 25, 2004. Receiver Dennis L. Roossien, Jr. ("Receiver") filed a Response on November 15, 2004, and Monroe filed a Reply on January 13, 2005.[1] Additionally, Receiver filed a Sur-Reply on February 1, 2005, and Monroe filed a Response to the Sur-Reply on February 22, 2005. After

---

[1] On January 20, 2005, the parties filed a Joint Stipulation Regarding Motion to Amend or Alter the General Plan of Distribution and to Authorize Litigation to Proceed in Louisiana Court and Opposition Thereto. Therein, the parties "agreed to withdraw, without prejudice, all of the relief sought in the Motion and the Response, save and except for Monroe's request that this Court grant him permission to proceed against IPIC in the United States District Court for the Eastern District of Louisiana ('Louisiana Court') . . . ." Joint Stipulation at 2. Indeed, the Reply addresses arguments only with regard to that point. Therefore, this Court addresses only whether Monroe may proceed in the Louisiana Court.

**3:03-CV-2781-P**
**Order GRANTING Monroe's Motion to Authorize**
**Page 1**

considering the parties' arguments and briefings, and the applicable law, the Court GRANTS

Monroe's Motion to Authorize.

## I.      Background and Procedural History

On or about April 5, 2001, Monroe loaned Bottle Rock Power Corporation ("BRPC"),

David Jones ("Jones"), and Jimmy Winemiller ("Winemiller"), $1,500,000 to enable them to

purchase a "California geothermal power plant [(the "Plant")] from the State of California."[2]

On August 23, 2001, BRPC acquired the Plant.[3] "The loan was evidenced by a promissory note

dated June 27, 2001 and signed by [BRPC], Jones, and Winemiller.  The principal and interest

due on the note was due and payable on July 26, 2001 . . . ."[4] Additionally, "Monroe posted a

$5,000,000 letter of credit in favor of Greenwich Insurance Company ('Greenwich'), which was

used to secure a bond for the purchase of the [Plant]."[5] Approximately eight months later, on

April 19, 2002, Monterey Farms Inc. ("MFI") and A&B Farms ("A&B"), "which Monroe

alleges were owned by Jones and Winemiller, acquired the stock of [BRPC] . . . ."[6] As part of

the acquisition, MFI and A&B "agreed to cause Greenwich to have the Monroe letter of credit

released upon sale of the stock so that Monroe would no longer be responsible for the letter of

---

[2] *Estate of J. Edgar Monroe v. Bottle Rock Power Corp.*, No. Civ.A. 03-2682, 2005 WL 119883, at *2-3 (E.D. La. Jan. 19, 2005) [hereinafter *Bottle Rock Opinion*].  In large part, the Court has adopted the factual background of the *Bottle Rock Opinion* for its own procedural background and history.

[3] *Id.* at *1.

[4] *Id.*

[5] *Id.*

[6] *Id.* "At that time, BRPC had issued 10,000 shares of stock.  Those shares were owned by the following shareholders:  [MFI] owned 8800 shares; Ronald Suess owned 600 shares; and Louis Capuano owned 600 shares." App. to Resp. at 3 (citing Hagan dep. at p. 18, l. 20 to p. 19, l. 12 (App. to Resp. at 19)).

3:03-CV-2781-P
**Order GRANTING Monroe's Motion to Authorize**
**Page 2**

credit," to compensate Monroe for transaction costs used to obtain the letter of credit, "and to

pay Monroe $1,000,000 as compensation for providing the letter of credit."[7]

Notwithstanding the acquisition agreement, MFI and A&B "failed to release [Monroe's]

letter of credit, . . . failed to fully pay amounts due on the note," and apparently "sold the stock

of [BRPC] in May of 2003 " to Bottle Rock Holdings [Corp.] ("BRH") for a purchase price of

$10,000,000.00.[8]  Receiver alleges that BRH purchased the stock with the use of $5 million of

IPIC funds.  Receiver alleges further that Monroe received $2,321,420.00 of IPIC funds as a

result of the sale of stock.[9]

Subsequent to the sale , Monroe brought suit in the Eastern District of Louisiana against

BRPC, Jones, and Winemiller (the "defendants"), "under the terms of the promissory note,

alleging that those defendants paid the principal due on the note but still [owed] $4,446,439.05

on interest, plus attorney's fees."[10]  Additionally, Monroe brought suit against MFI and A&B

"for breach of the agreement to release the letter of credit and to pay Monroe's transaction

costs."[11]

Furthermore, Monroe also brought suit in the Eastern District of Louisiana against BRH

and IPIC "for failure to have the letter of credit released based on a separate agreement signed on

---

[7] *Bottle Rock Opinion*, 2005 WL 119883, at *1.

[8] *Id.* at *1; *see* Hagan dep. at p. 42, l. 20 to p. 44, l. 6 (App. to Resp. at 25).  According to the terms of the Stock Purchase Agreement, "[t]he payments were due in two installments -- $5 million due at closing and $5 million due under two notes." App. to Resp. at 7; *see also* Stock Purchase Agreement (App. to Resp. at 34).  Additionally, according to the Stock Purchase Agreement, MFI owned 8,800 shares of BRPC at that time.  *See* Stock Purchase Agreement (App. to Resp. at 33).

[9] *See* Hagan dep. at p. 43, l. 10 to p. 45, l. 25 (App. to Resp. at 25-26).

[10] *Bottle Rock Opinion*, 2005 WL 119833, at *1.

[11] *Id.* at *1.

3:03-CV-2781-P
**Order GRANTING Monroe's Motion to Authorize**
**Page 3**

July 22, 2003 after [BRH] acquired the [BRPC] stock from [] [MFI] and/or [A&B]."[12]   Monroe

alleges that "[u]nder the terms of this separate agreement . . . Monroe agreed to extend the letter

of credit for thirty (30) days in exchange for [BRH's] and IPIC's agreement to have the letter of

credit released and to pay Monroe's out of pocket expenses incurred as a result of the

extension."[13]

Finally, on January 19, 2005, Judge Fallon of the Eastern District of Louisiana, ruled that

the court had personal jurisdiction and venue over defendants BRPC, Jones, Winemiller, MFI,

A&B, and IPIC.  Notwithstanding that ruling, the Louisiana court stayed the claims against IPIC

"pending either permission or denial of permission to proceed by [this Court]."[14]

## II.   The Louisiana Proceeding

While nothing absolutely bars Monroe from prosecuting its claim, it must first receive

permission from this Court.  Paragraph Nine of the Order Appointing Permanent Receiver

("Receivership Order") states:

> This Order does not prohibit the prosecution of any civil action or other
> proceeding against [IPIC], including non-dischargeability proceedings and
> enforcement of any judgments obtained in such actions or proceedings, or effect
> the release of any claim asserted therein.  However, to the extent judgment
> creditors or other claimants seek to prosecute an action or proceeding against
> [IPIC], or to satisfy a judgment or claim from Receivership Assets, they will do
> so *only with the prior permission of this Court* or the United States Bankruptcy
> Court in the event the Receiver recommends and the Court approves
> commencement of such a proceeding, and in accordance with an order of priority

---

[12] *Id.* at *2.

[13] *Id.*

[14] *Id.* at *10.

**3:03-CV-2781-P**
**Order GRANTING Monroe's Motion to Authorize**
**Page 4**

established by a plan of liquidation and distribution, or any automatic or other stay provided under the Bankruptcy Code.[15]

Receivership Order at 6 (emphasis added).

Receiver argues that IPIC is not a mandatory party to the Louisiana dispute, and that Monroe suffers no prejudice by having to proceed in this Court because any judgment would have to be enforced in this forum. Notwithstanding those contentions, this Court finds good reason to allow Monroe to proceed in the Louisiana court.[16]

   a.   **Louisiana Factors**

Although Monroe concedes that IPIC is not a mandatory party to the Louisiana action, he argues that because the parties are intertwined, singular proceedings in Louisiana would avoid duplicative litigation. The Court agrees with this contention. First, neither the parties, nor the subject matter of the Louisiana proceeding seem to bear any connection to the State of Texas. Indeed, the only Texas contact seems to be the location of the receivership court. Second, because Receiver asserts IPIC "has a constructive trust claim against Monroe for $2.8 million of investor funds," Sur-Reply at 6, the Court finds Louisiana to be the best forum to bring the counterclaim. While Monroe strongly objects to the jurisdiction of *this* Court to hear that dispute, all parties agree that Louisiana may hear such a claim.

---

[15] On December 15, 2003, the Court appointed Dennis L. Roossien, Jr. as permanent Receiver of IPIC's receivership estate. Hence, claims against IPIC automatically involve the Receiver.

[16] The Court does not consider Receiver's argument that "the cost to the Receiver of litigating receivership claims in another state would be significant." Sur-Reply at 4-5. As Monroe notes, "IPIC has not explained why the litigation expenses would be materially less in this Court than in the Louisiana Court." Response to Sur-Reply at 2. Likewise, the Court does not consider Monroe's argument that "a receivership does not 'prevent the commencement of prosecution to judgment of an action against an entity when a receiver has been appointed over the entity's property.'" Reply at 6 (quoting *Leenen v. Ruttgers Ocean Beach Lodge, LTD*, 662 F.Supp. 240 (S.D. Fla. 1987)). Neither the Receiver, nor this Court is attempting to prevent Monroe from *proceeding* against IPIC, only the *forum* of choice is at issue.

Moreover, while a "receivership court has broad equitable powers to prevent interference with the administration of the [receivership] estate by blanket stay orders as well as injunctions against particular action," *SEC v. United Financial Group, Inc.*, 576 F.2d 217, 221. n.8 (9th Cir. 1978), the Court remains dubious whether it can control the location of all prosecutions. *Diners Club, Inc v. Bumb*, 421 F.2d 395 (9th Cir. 1970), supports that suspicion. That decision examined the power of 28 U.S.C. § 959(a), which reads:

> Trustees, receivers, or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions *shall be subject* to the general equity power of such court so far as the same shall be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a) (emphasis added).

The court interpreted § 959(a) to mean "[i]f a plaintiff was at liberty to sue the receiver in any competent court without prior leave, so was the appointing court at liberty to use its injunctive powers to protect the receiver, or to guard the property in its custody." *Diners Club, Inc.*, 421 F.2d at 399. However, the decision limited those injunctive powers to suits that "would significantly interfere with the administration of the estate." *Id.* 401. Moreover, the court found further reason to limit that injunctive protection. "For regardless of the effect of § 959(a), there is a strong policy against enjoining suits in other courts except upon a satisfactory showing that prosecution of the action would embarrass the administration of the debtor's estate." *Id.* at 402 (citing *Foust v. Munson S.S. Lines*, 299 U.S. 77, 84 (1936); *Thompson v. Texas Mexican Ry.*, 328 U.S. 134, 140-41 (1946)).

Although not synonymous, the Court finds that Paragraph Nine of the Receivership Order mirrors the effect of 28 U.S.C. § 959(a). Both provisions allow suit against the receiver only with the permission of the appointing court. However, in light of persuasive authority from both the Ninth Circuit and the Supreme Court, it seems logical to inquire why such permission should be denied. To wit, while a party must seek permission from this Court to prosecute its claim, Receiver offers no reason why such a claim hampers the administration of its estate. At best, it contends that this Court holds the proper forum because "Monroe would be required to enforce [any] judgment in [this Court], thereby requiring both Monroe and the Receiver to proceed in two separate forums." Sur-Reply at 5. This reply does not convince the Court to withhold its permission. The Louisiana court is familiar with the facts of the case and appears to be ready to proceed with the action. All parties and evidence can be gathered in a single forum, with all results occurring at once. Enforcing a judgment in this Court will likely require less resources if that situation occurs.

## III.    Listed Conditions

Because Monroe's claim against IPIC may cause indirect consequences to the receivership estate, the Court finds its necessary to condition its permission. Therefore, the Court GRANTS Monroe's Motion to Authorize subject to the following:

1. Monroe may not object to IPIC seeking its counterclaim (purported disgorgement claim) against Monroe in the Louisiana court, subject to the Louisiana Court allowing the counterclaim;

2. Monroe may not adjudicate the priority of its claim in relation to other defrauded investors and creditors of IPIC; and

3. Monroe may not attempt to collect any rendered judgment in any forum other than this Court.

**3:03-CV-2781-P**
**Order GRANTING Monroe's Motion to Authorize**
**Page 7**

IV.     **Conclusion**

For the foregoing reasons, the Court GRANTS Monroe's Motion to Authorize according

to the listed conditions.

**It is so ordered.**


Signed this *5th* day of July 2005.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

**3:03-CV-2781-P**
**Order GRANTING Monroe's Motion to Authorize**
**Page 8**